# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

NEELAM UPPAL,

      Plaintiff,                                Case No. 8:19-cv-1334-T-02JSS

v.

WELLS FARGO BANK, NA,
doing business in the State of Florida,
and John Does 1–5 (Unknown),

      Defendants.
_____/

## ORDER

Plaintiff Neelam Uppal ("Plaintiff") sues Defendant Wells Fargo Bank, NA ("Wells Fargo") and unknown Defendants John Does 1–5 in connection with a mortgage loan she alleges was procured by forged documents and the subsequent foreclosure of her residential property. (Dkt. 1). In her seven-count Amended Complaint, Plaintiff seeks declaratory and injunctive relief, as well as monetary damages, against Wells Fargo and the five unknown "John Doe" Defendants. (Dkt. 16). This matter is before the Court on Defendant Wells Fargo's Motion to Dismiss Complaint (Dkt. 35) and Plaintiff's response in opposition (Dkt. 36). After careful consideration of the motion to dismiss, applicable law, and the allegations of the Amended Complaint, the Court grants the motion to dismiss and will permit Plaintiff an opportunity to amend her Fair Credit Reporting Act claim against Wells Fargo.

**I.    Procedural and Factual Background[1]**

Plaintiff initiated the instant action against Wells Fargo on June 3, 2019. (Dkt. 1). Prior to Wells Fargo being served with the Complaint, Plaintiff filed an Amended Complaint on August 30, 2019, in which she sues Wells Fargo and John Does 1–5 in connection with the foreclosure of property located at 8760 46th Street, Pinellas County, Florida.[2] (Dkt. 16). Plaintiff states the property, which is her primary residence, was purchased by the Sheena Trust. *Id.* ¶¶ 7, 9. She attaches an "unofficial copy" of a "Trustee's Deed" dated May 16, 2003, that identifies her as the Trustee of the Sheena Trust. (Dkt. 18 at 3). Plaintiff alleges she obtained a "collateral loan" from the trust on May 16, 2003. (Dkt. 16 ¶ 10). According to Plaintiff, she paid off the loan on September 7, 2005. *Id.* ¶ 11. She attaches a "Release of Mortgage" which appears to have been signed and notarized in California and is mostly illegible. (Dkt. 18 at 14). Plaintiff asserts the Release is evidence of satisfaction of the loan. (Dkt. 16 ¶ 11).

Plaintiff alleges that on December 1, 2005, Wells Fargo fraudulently issued a loan on the property by forging "ROBO" signatures. *Id.* ¶ 12. She claims that she

---

[1] The facts are taken from Plaintiff's Amended Complaint (Dkt. 16) and state court pleadings filed in the record (Dkt. 34) of which the Court takes judicial notice. *See* note 3, *infra*. The Court accepts all well-pled allegations as true in ruling on the instant motion and construes them in the light most favorable to Plaintiff. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008) (citation omitted).

[2] The documents Plaintiff files with the Amended Complaint, which are for the most part illegible, *see* Dkt. 18, reflect that the property is located in the city of Pinellas Park. *See id.* at 3.

never received any funds from the forged loan. *Id.* ¶ 13. In 2012, Wells Fargo filed a foreclosure action against Plaintiff in state court. *Id.* ¶ 14. Although Plaintiff alleges she was never served with the complaint in the foreclosure action, *see id.*, Wells Fargo requests this Court take judicial notice of pleadings from the state court case, including Plaintiff's answer, defenses, and counterclaim to the foreclosure complaint. *See* Dkts. 34, 34-3–34-6.[3]

In her initial answer to the state foreclosure complaint, Plaintiff claims the foreclosure was fraudulent because "the bank solicited the loan on false grounds." (Dkt. 34-3 ¶ 1). In additional pleadings directed to the foreclosure complaint, Plaintiff raises violation of the Florida Unfair and Deceptive Trade Practices Act, violation of the Fair Debt Collection Practices Act, TILA rescission, unclean hands by Wells Fargo, fraud and manipulation of the court because the loan documents had been altered with ROBO signatures, fraud in the inducement and predatory lending

---

[3] A court may take judicial notice of and consider public records that are attached to a motion to dismiss and are central to a plaintiff's claims, without converting the motion to dismiss into a motion for summary judgment. The court may do so provided such documents are "public records that [are] 'not subject to reasonable dispute' because they [are] 'capable of accurate and ready determination by resort to sources whose accuracy [can]not reasonably be questioned.'" *Horne v. Potter*, 392 Fed. App'x 800, 802 (11th Cir. 2010) (quoting Fed. R. Evid. 201(b)). Additionally, "a court may take notice of another court's order . . . for the limited purpose of recognizing the 'judicial act' that the order represents or the subject matter of the litigation." *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) (citations omitted). Thus, the pleadings filed from prior state court proceedings, *see* Dkt. 34, are public records appropriate for judicial notice. *See Talley v. Columbus, Ga. Hous. Auth.*, 402 F. App'x 463, 465 n. 4 (11th Cir. 2010) ("Although the district court was ruling on a motion to dismiss, the court properly examined extrinsic documents detailing [plaintiff's] previous state and federal court cases that related to the condemnation of his property: the cases were central to [plaintiff's] instant federal claim.").

practices, violation of the Florida False Claims Act, violation of a bankruptcy stay, challenges to the authenticity of the signatures on the loan, civil theft, and civil fraud. *See* Dkts. 34-4, 34-5, 34-6. The counterclaim filed by Plaintiff on February 22, 2016, *see* Dkt. 34-6, was dismissed by the circuit court judge for failing to comply with procedural requirements and the court's order. *See* Dkt. 34-7. Plaintiff filed a second counterclaim in January 2019, alleging she was tricked into purchasing the home and the entirety of the loan is a fraud perpetrated by forged documents. (Dkt. 34-8). The state court dismissed the second counterclaim. (Dkt. 34-9). Notwithstanding her responsive pleadings and initial counterclaim filed in the state court case in 2013 and 2016, she asserts she did not discover the forged loan note until February 2018 during bankruptcy proceedings.[4] (Dkt. 16 ¶ 20).

Trial was held in the state court foreclosure action in January 2019, and following same, final judgment was entered in Wells Fargo's favor in the amount of $303,069.04. (Dkt. 34-10). Sale of the property was scheduled for April 2, 2019. *Id.* at 3. Plaintiff filed an appeal of the judgment which is still pending. *See Uppal v. Wells Fargo*, Case No. 2D19-0676 (Fla. 2d DCA 2019). Plaintiff filed multiple motions seeking to delay the property sale claiming fraud. *See, e.g.,* Dkt. 34-1 at 5, referencing Docs. # 44, 67, 73, 76, 80, 92. In denying these motions, the court noted

---

[4] There is no indication from the parties or based on the Court's review of the Middle District of Florida Bankruptcy Court dockets that there are any active bankruptcy proceedings involving Plaintiff.

4

in response to one, "This case has been litigated for over six years with [Uppal] claiming 'fraud' throughout since her initial answer filed January 1, 2013. Any issue of 'fraud' was resolved or must have been raised previously." Dkt. 34-11. The sale of the property ultimately proceeded on October 8, 2019. *See* Dkt. 34-1 at 2, referencing Doc. #188.

In Count I of the Amended Complaint, Plaintiff sues Wells Fargo for alleged civil RICO violations under 18 U.S.C. § 1964. Dkt. 16 ¶¶ 23–34. Plaintiff alleges that Defendants engaged in a pattern of corrupt activity to collect an unlawful debt and acquire an interest in her primary residence. *Id.* ¶ 25. She alleges Defendants' conduct in defrauding Plaintiff through the use of forged loan documents constitutes an "enterprise." *Id.* ¶ 27. Plaintiff seeks to have this Court divest Defendants of any interest in the real property, order injunctive relief, and award treble damages, attorney's fees and costs. *Id.* ¶¶ 30–34.

Count II of the Amended Complaint alleges mail fraud in violation of the RICO statute. *Id.* ¶¶ 35–39. Plaintiff states that Defendants committed mail fraud in violation of 18 U.S.C. § 1343 by transmitting the forged loan documents by wire or mail to defraud Plaintiff or obtain money or property by fraudulent means. *Id.* ¶¶ 38–39.

In Count III of the Amended Complaint, Plaintiff attempts to state a claim for violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §

5

2601, *et seq*. Dkt. 16 ¶¶ 40–43. She pleads that Defendants accepted charges for the rendering of real estate services that were not performed. *Id.* ¶ 42. She seeks three times the amount of charges paid for "settlement services" pursuant to 12 U.S.C. § 2607(d)(2). Dkt. 16 ¶ 43.

Count IV sues Defendants for violations of the Truth-in-Lending Act ("TILA"). *Id.* ¶¶ 44–47. Plaintiff alleges that Defendants failed to include and disclose certain charges on the truth-in-lending statement in connection with the extension of credit. *Id.* She asserts that Defendants' failure to provide her with the required disclosures permits her the right to rescind the transaction. *Id.*

Count V alleges that Defendants violated the Fair Credit Reporting Act ("FCRA") by wrongfully and improperly reporting negative information regarding Plaintiff to one or more credit reporting agencies. *Id.* ¶¶ 48–53. She alleges that Defendants qualify as providers of information under the FCRA and that she is entitled to recover damages pursuant to 15 U.S.C. § 1681o for Defendants' negligent non-compliance with the Act. *Id.* ¶¶ 49, 52. She further claims entitlement to punitive damages pursuant to 15 U.S.C. § 1681n(a)(2) due to Defendants' willful noncompliance with the FCRA. Dkt. 16 ¶ 53.

In Plaintiff's final two counts, labeled VII and VIII,[5] Plaintiff sues Defendants for state law claims of fraudulent misrepresentation and civil conspiracy. *Id.* ¶¶ 54–

---

[5] There is no count labeled Count VI; the Amended Complaint skips from Count V to Count VII.

60, 61–66. Plaintiff alleges Defendants made material misrepresentations and omissions in connection with the mortgage, that she relied upon the material misrepresentations, and as a result, she suffered damages. *Id.* ¶¶ 55–60. In the civil conspiracy count, she alleges that Defendants committed one or more overt acts in furtherance of the conspiracy to defraud her. *Id.* ¶ 62. The conspiracy was allegedly committed for the common purpose of accruing economic gain at Plaintiff's expense. *Id.* ¶ 63.

In each of Plaintiff's counts, she incorporates the general allegations related to Defendants' alleged forging of loan documents and foreclosure of her primary residence. *Id.* ¶¶ 23, 35, 40, 44, 48, 54, 61. Additionally, in each count, she seeks the same types of damages, including a preliminary injunction or restraining order precluding the foreclosure sale of her property, final judgment entered against Defendants, an award of damages, costs, attorney's fees, punitive damages, and any other damages the court deems just. *Id.* at 6–7, 8, 9, 11, 12–13, 14.

## II. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In considering the motion, the court accepts all factual allegations of the complaint as true and construes them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008) (citation

7

omitted). Courts should limit their "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc*., 358 F.3d 840, 845 (11th Cir. 2004) (citations omitted).

**III.  Discussion**

Wells Fargo moves to dismiss the Amended Complaint with prejudice arguing that Plaintiff's claims are barred by the compulsory counterclaim rule and the doctrine of judicial estoppel. Dkt. 35 at 8–14. Wells Fargo urges these issues have been previously litigated or should have been litigated as part of the state court proceedings. Additionally, Wells Fargo argues this Court lacks jurisdiction based on the *Rooker-Feldman* doctrine. *Id.* at 14–17. Wells Fargo next argues Plaintiff's clams are barred by the applicable statutes of limitations and finally that all claims fail in any event for failing to state a claim. *Id.* at 18–22. In her response to the motion, Plaintiff argues that her attempts to raise the issues and challenge the Defendants' fraudulent conduct was "shut down" by the state court because her counterclaim was dismissed. She claims she was unjustly prevented from raising her arguments before the state court because she was prevented from filing her counterclaim. Dkt. 36.

A. *Rooker-Feldman* Doctrine does not Apply

"Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010). Here, Wells Fargo claims this Court lacks subject matter jurisdiction because of the *Rooker-Feldman* doctrine.[6] "The *Rooker–Feldman* doctrine places limits on the subject-matter jurisdiction of federal district courts and courts of appeal over certain matters related to previous state court litigation." *Goodman v. Sipos*, 259 F.3d 1327, 1332 (11th Cir. 2001). The Supreme Court applies the doctrine to only cases "of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Under the *Rooker-Feldman* doctrine, federal courts do not have jurisdiction to review state court decisions. *May v. Morgan Cty.*, 878 F.3d 1001, 1004 (11th Cir. 2017) (citations omitted). The doctrine is a narrow one. To apply the doctrine, a defendant must demonstrate the case is one (1) brought by a state-court loser (2) complaining of injuries caused by a final state-court judgment (3) that was rendered before the district court proceedings

---

[6] The *Rooker-Feldman* doctrine arises from the following cases: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

9

commenced and (4) invites the district court to review and reject that judgment. *Id.* (citation omitted). While Plaintiff here is a state-court loser who is complaining about injuries caused by the state court entered judgment against her in the foreclosure action, the judgment was not final before these district court proceedings commenced. The underlying state court case is currently pending on appeal to the Second District Court of Appeal. *See Uppal v. Wells Fargo*, Case No. 2D19-0676 (Fla. 2d DCA 2019). Thus, because there is no final state court judgment, the *Rooker-Feldman* doctrine does not apply to bar this Court's jurisdiction. *See Nicholson v. Shafe*, 558 F.3d 1266, 1279 (11th Cir. 2009) (holding that "state proceedings have not ended for purposes of *Rooker–Feldman* when an appeal from the state court judgment remains pending at the time the plaintiff commences the federal court action that complains of injuries caused by the state court judgment and invites review and rejection of that judgment").

B. <u>Collateral Estoppel and Florida's Compulsory Counterclaim Rule</u>

Wells Fargo argues that Plaintiff's claims are barred by collateral and the compulsory counterclaim rule. In considering whether to give preclusive effect to state court judgments, federal courts must apply that state's law of collateral estoppel. *See Vazquez v. Metro. Dade Cty.*, 968 F.2d 1101, 1106 (11th Cir. 1992). As explained by the Florida Supreme Court, "[c]ollateral estoppel is a judicial doctrine which in general terms prevents identical parties from relitigating the same

issues that have already been decided." *Dep't of Health & Rehab. Servs. v. B.J.M.*, 656 So. 2d 906, 910 (Fla. 1995) (citation omitted). "Under Florida law, collateral estoppel applies if (1) an identical issue, (2) has been fully litigated, (3) by the same parties or their privies, and (4) a final decision has been rendered by a court of competent jurisdiction." *Quinn v. Monroe Cty.*, 330 F.3d 1320, 1329 (11th Cir. 2003). Plaintiff and Wells Fargo were both parties to the state court foreclosure action, and thus the parties are the same. The gravamen of Plaintiff's claims here is the alleged fraudulent conduct of Wells Fargo in forging loan documents. The issue of fraud and the forged loan documents is pervasive throughout her claims in the instant action, and as noted by one state court order, Plaintiff has been claiming fraud regarding the loan and mortgage since the filing of her answer in 2013 in the foreclosure action. The issue of fraud was raised in the state court action and the case was tried.

Even if the fraud issue was not fully litigated in the state action, however, most of Plaintiff's claims are still barred here. Under Florida's compulsory counterclaim rule, "the failure [of a party] to bring a compulsory counterclaim in a state court proceeding bars a subsequent suit in federal court on that claim." *Beepot v. J.P. Morgan Chase Nat. Corp. Servs., Inc.*, 57 F. Supp. 3d 1358, 1370 (M.D. Fla. 2014), *aff'd sub nom. Beepot v. JP Morgan Chase Nat. Corp. Servs., Inc.*, 626 F.

App'x 935 (11th Cir. 2015) (citations omitted). In pertinent part, Florida Rule of Civil Procedure 1.170 governing compulsory counterclaims states as follows:

> A pleading *must* state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, provided it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties over whom the court cannot acquire jurisdiction.

Fla. R. Civ. P. 1.170(a) (emphasis added). Federal Rule 13(a) pertaining to compulsory counterclaims similarly provides, "[a] pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim . . . arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a)(1)(A). "Thus, a compulsory counterclaim is a defendant's cause of action 'arising out of the transaction or occurrence that formed the subject matter of the plaintiff's claim.'" *Montgomery Ward Dev. Corp. v. Juster*, 932 F.2d 1378, 1381 (11th Cir. 1991) (quoting *Yost v. Am. Nat'l Bank*, 570 So. 2d 350, 352 (Fla. 1st DCA 1990)). A party's failure to raise a compulsory counterclaim in the first suit results in a waiver of the claim such that the party may not raise the claim in a subsequent suit. *Id.* (citing *Yost*, 570 So. 2d at 352).

Th Florida Supreme Court has adopted the federal "logical relationship test" in determining whether a claim is compulsory:

> [A] claim has a logical relationship to the original claim if it *arises* out of the same aggregate of operative facts as the original claim in two senses: (1) that the same aggregate of operative facts serves as the basis of both claims; or (2) that the aggregate core of facts upon which the original claim rests activates additional legal rights in a party defendant that would otherwise remain dormant.

*Londono v. Turkey Creek, Inc.*, 609 So. 2d 14, 20 (Fla. 1992) (citing *Neil v. S. Fla. Auto Painters, Inc.*, 397 So. 2d 1160, 1164 (Fla. 3d DCA 1981) (quoting *Revere Cooper & Brass, Inc. v. Aetna Cas. & Surety Co.*, 426 F.2d 709, 715 (5th Cir. 1970)).

In each of Plaintiff's claims here she alleges the same general core facts that the loan on the mortgage was fraudulently obtained due to forged documents. *See* Dkt. 16 ¶¶ 7, 9–21. Plaintiff asserts several claims for relief based on the same loan transaction, mortgage, and residential property that were at issue in the state foreclosure action. She even filed a counterclaim in the state court action setting forth the same claims of fraud and forged documents that serve as the basis for her claims in the instant action. Upon review, the Court finds that, except for the alleged violation of the FCRA, the Plaintiff's claims against Wells Fargo in the remaining Counts were either actually raised in, or should have been raised in, the state foreclosure action initiated by Wells Fargo, and thus are barred by the doctrine of preclusion or the compulsory counterclaim rule.

In Plaintiff's RICO claims in Counts I and II, she alleges that Defendants falsified signatures on the loan documents in an effort to divest Plaintiff of her property. *Id.* ¶¶ 27, 30, 38, 39. Count III claims a violation of RESPA arising out of

13

the mortgage loan on the subject property. *Id.* ¶ 42. In Count IV Plaintiff claims Defendants violated the TILA by failing to disclose finance and other charges associated with the mortgage and loan. *Id.* ¶¶ 45–47. In Counts VII and VIII, she alleges fraud, misrepresentation, and conspiracy related to the closing on the mortgage loan. *Id.* ¶¶ 55, 62. Because these claims were either previously litigated in the state foreclosure action between Plaintiff and Wells Fargo or are logically related to that suit, the claims are barred in this Court. The allegations in these Counts of the Amended Complaint are intertwined with the validity of the loan and mortgage, the rights of those claiming an interest in the subject property, and the propriety of foreclosure—all matters adjudicated in the state foreclosure action. Accordingly, Counts I, II, III, IV, VII, and VIII are due to be dismissed with prejudice.

    C.    <u>Fair Credit Reporting Act Claim</u>

Count V of the Amended Complaint sues for violations of the FCRA. (Dkt. 16 ¶¶ 48–53). Although Plaintiff includes the general allegations regarding the forged loan documents, the claim in this Count differs slightly. Plaintiff alleges that Defendants were providers of information to the credit reporting agencies ("CRAs"), Experian, Equifax, and TransUnion. *Id.* ¶ 49. Plaintiff alleges that Defendants wrongfully reported negative information about Plaintiff to one or more of the CRAs which resulted in lowering her credit score. *Id.* ¶ 50. In a light most favorable to the

Plaintiff if she were able to properly allege ultimate facts under the FCRA, such allegations arguably would state a separate and independent claim, *i.e*., one that is not compulsory. However, Plaintiff fails to allege any facts identifying the inaccurate or negative information allegedly reported, when the information was provided, if the alleged wrongful information was disputed, and whether notice of the dispute was provided by Plaintiff. As pled, Count V fails to state a claim under the FCRA.

The FCRA requires furnishers of credit information to investigate the accuracy of such information upon receiving notice of a dispute. 15 U.S.C. § 1681s–2(b). "This provision of the FCRA can be enforced through a private right of action, but only if the furnisher received notice of the consumer's dispute from a consumer reporting agency." *Peart v. Shippie*, 345 F. App'x 384, 386 (11th Cir. 2009) (citing 15 U.S.C. § 1681s–2(b)(1)). Plaintiff has not alleged anything about notice. After receiving such notice, a bank is required to "conduct an investigation with respect to the disputed information" and "review all relevant information provided" to it by the CRA. 15 U.S.C. § 1681s–2(b)(1)(A)–(B). Following its investigation, the furnisher of information must report back to any CRA that notified it of the dispute. 15 U.S.C. § 1681s–2(b)(1)(C). If the investigation results in a finding that the bank provided incomplete or inaccurate information to the CRA, then it must report the results of its investigation to all other CRAs that received such incomplete or inaccurate

information. 15 U.S.C. § 1681s–2(b)(1)(D). If the investigation is either inconclusive or results in a finding that the bank provided incomplete or inaccurate information to the CRA, then the bank, "for purposes of reporting to a [CRA] only, as appropriate, based on the results of the reinvestigation [shall] promptly (i) modify that item of information; (ii) delete that item of information; or (iii) permanently block the reporting of that item of information." 15 U.S.C. § 1681s–2(b)(1)(E). The bank must complete its investigations, reviews and reports within the 30-day period after the consumer notifies the CRA of the dispute. 15 U.S.C. § 1681s–2(b)(2). Plaintiff fails to plead facts to state a claim under the FCRA.

Defendant argues that Plaintiff's claim would be barred by the statute of limitations in any event. However, without knowing when the alleged violations occurred, which does not appear on the face of the Amended Complaint, dismissal on statute of limitations grounds is improper.

Accordingly, to the extent Plaintiff can properly state a claim under the FCRA, she may replead such claim within fourteen days.

D.  Fictitious Parties

Plaintiff names John Does 1–5 as Defendants in her Amended Complaint. (Dkt. 16). The Court will *sua sponte* dismiss these Defendants because, as the Eleventh Circuit has recognized, "fictitious-party pleading is not permitted in federal court." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010). A limited

exception to this rule exists "when the plaintiff's description of the defendant is so specific as to be 'at the very worst, surplusage.'" *Id.* (quoting *Dean v. Barber*, 951 F.2d 1210, 1215–16 (11th Cir. 1992)). In that regard, there is a difference between suing a specific, known party under a fictitious name which is permitted in certain circumstances and suing an entirely unknown, hypothetical person which is prohibited in federal court. *See, e.g., Dean*, 951 F.2d at 1215–16. Plaintiff's claims against the fictitious defendants in her Amended Complaint fall within the latter category. In the Amended Complaint she fails to describe or provide any detail whatsoever about the identity of the John Does, their relationship to Defendant Wells Fargo, or their specific involvement as it relates to the mortgage loan. She alleges that she is "unaware of the true identities and capacities of Defendants John Does 1–5, inclusive, and therefore sue[s] these Defendants by fictitious names. Plaintiff was informed and believe[s], pursuant to the course of events and facts set forth herein, that John Does 1–5 is (sic) responsible, together with the named Defendants above, for the acts and omissions set forth herein . . . ." Dkt. 16 ¶ 2. None of the general allegations regarding the issuance of the loan and alleged forgery of loan documents reference John Does 1–5. *See id.* ¶¶ 9–22. Her vague allegations about the John Doe Defendants do not fit the limited exception to the general prohibition against fictitious-party pleading in federal court. Therefore, all fictitious parties will be dismissed.

## IV. Conclusion

Based on the foregoing, it is **ORDERED** that

Wells Fargo's Motion to Dismiss (Dkt. 35) is **GRANTED**. Counts I, II, III, IV, VII, and VIII are **dismissed with prejudice**. Count V of the Amended Complaint is **dismissed without prejudice**. All fictitious parties are dismissed as party Defendants. Plaintiff may file an amended complaint within fourteen (14) days to attempt to state a claim under the FCRA against Wells Fargo. Failure to timely file an amended pleading may result in the case being dismissed without further notice.

**DONE AND ORDERED** at Tampa, Florida, on November 12, 2019.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record